IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **WESTFIELD INSURANCE COMPANY,**<br><br>      **Plaintiff,**<br><br>    v.<br><br>**ROSE PAVING COMPANY, ALAN ROSE, MICHAEL ROSE, CARL QUANSTROM, SCOT VANDENBERG, and PATRICIA VANDENBERG,**<br><br>      **Defendants.** | **Case No. 12 C 40**<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Several Motions are pending before the Court. For the reasons discussed herein, the Motions are resolved as follows: Plaintiff's Motion for Judgment on the Pleadings is granted; Defendants' Motion to File a Combined Brief is granted; Plaintiff's Motion to Strike is denied; Defendants' Motion for Summary Judgment is denied.

## I. BACKGROUND

This insurance coverage dispute arises from an accident that occurred on a 75-foot yacht. The following background information, drawn from the pleadings in this case, is uncontested unless noted otherwise.

Defendants Rose Paving and Alan Rose ("the Rose Defendants"), along with several others who are not parties here, owned the yacht and operated it for cruises on Lake Michigan. It appears that those parties used the trade name "RQM" for their yacht business.

On September 1, 2009, Scot Vandenberg attended a five-hour cruise on the chartered yacht. During the event, Mr. Vandenberg was sitting on a bench on the yacht's upper deck. The deck lacked an upper railing, and the bench was not secured. Mr. Vandenberg sustained severe injuries when the bench tipped over and he fell to the bottom deck.

Plaintiff Westfield Insurance Company had issued a policy of commercial general liability ("CGL") insurance, as well as an umbrella policy (collectively, the "Westfield policies"), to Rose Paving. The insuring agreement provided that Plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." ECF No. 56-1 at 75.

In the insuring agreement, Rose Paving's business is described as "concrete construction." ECF No. 56-1 at 54. The "Schedule of Hazards" lists the risks associated with Rose Paving's business: "concrete construction," "contractors executive supervisors," and "subcontractors." ECF No. 56-2 at 49. According to the contract, Rose Paving did not own, hire, or lease any watercraft, docks, or floats. ECF No. 56-2 at 50. The document includes a section entitled "representations," in which the parties agreed that (1) the policy was based on statements and representations made to Plaintiff, (2) those statements were accurate and complete, and (3)

Plaintiff issued the policy in reliance upon those representations. ECF No. 56-1 at 86.

Two underlying lawsuits preceded this case. The Vandenbergs – Scot and his wife, Patricia – filed suit in Illinois state court against Rose Paving Company, Alan Rose, and other defendants not parties to this action ("the *Vandenberg* suit"). Westfield denied any coverage for the claim and did not retain counsel to defend Rose Paving and Alan Rose. In the second case, *In re RQM, LLC* ("the *RQM* suit"), No. 10-CV-5520, RQM filed suit in this District in admiralty seeking exoneration from liability for the accident.

Plaintiff brought this action to determine the rights and duties of the parties under the Westfield policies. Later, the *Vandenberg* and *RQM* suits were resolved when all parties (other than Westfield, which was not party to those cases) settled. In their settlement agreement, the Rose Defendants assigned to the Vandenbergs the right to collect under the Westfield policies. The Rose Defendants were dismissed from this case, and the only remaining dispute is between Plaintiff and the Vandenbergs over whether Plaintiff must pay the Vandenbergs under the policy.

Plaintiff has moved for judgment on the pleadings. Defendants have responded by moving for summary judgment. Also pending are Defendants' Motion for Leave to File a Combined Brief and Plaintiff's Motion to Strike.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings, which include the complaint, the answer, and any written instruments, including contracts, that are attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452-53 (7th Cir. 1998). When ruling on a Rule 12(c) motion, the Court views the facts in the pleadings in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that there are no material issues of fact to be resolved. *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009).

Defendants dispute that this case can be resolved on the basis of the pleadings alone, and respond to the motion with a motion for summary judgment that asks the Court to consider evidence outside the pleadings. If the Court considers evidence outside the pleadings, a motion for judgment on the pleadings is treated as one for summary judgment. FED. R. CIV. P. 12(d).

## III. MOTION FOR JUDGMENT ON THE PLEADINGS

The crux of this litigation is whether the Westfield policies provide coverage to the Vandenbergs. Plaintiff argues that the Vandenbergs have no right to recover under the Westfield policies because they never had a duty to defend their insured in the underlying lawsuit. Defendants insist that Plaintiff owes a duty to indemnify the Vandenbergs under the policy because the claim is

covered and the insured party settled the claim against it in reasonable anticipation of liability. Because the Court concludes that the claim is not covered, the Court need not discuss whether Plaintiff owed a duty to defend.

In Illinois, the construction of an insurance policy is a question of law, and the Court's "paramount objective . . . is to give effect to the intent of the parties as expressed by the terms of the agreement." *Oakley Transp., Inc. v. Zurich Ins. Co.,* 648 N.E.2d 1099, 1106 (Ill. App. Ct. 1995). An insurance policy "is not to be interpreted in a factual vacuum and without regard to the purpose for which the insurance was written." *Id.* Rather, the Court construes the policy as a whole, "taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum & Foster Managers Corp. v. Resolution Trust Corp.,* 620 N.E.2d 1073, 1078 (Ill. 1993).

In this case, the underlying incident for which coverage is sought is a fall suffered on a yacht operated in part by the insured. Rose Paving, the insured, obtained insurance from Plaintiff for its work related to paving and construction. In the insuring agreement, Rose Paving's business is described as "concrete construction." ECF No. 56-1 at 54. The agreement's "Schedule of Hazards" lists the risks associated with Rose Paving's business as "concrete construction," "contractors executive

supervisors," and "subcontractors." ECF No. 56-2 at 49. According to the contract, Rose paving did not own, hire, or lease any watercraft, docks, or floats. ECF No. 56-2 at 50. The document includes a section entitled "representations," in which the parties agreed that (1) the policy was based on statements and representations made to Plaintiff, (2) those statements were accurate and complete, and (3) Plaintiff issued the policy in reliance upon those representations. ECF No. 56-1 at 86.

A similar situation arose in *Cooper v. RLI Ins. Co.,* No. CV 9403617028, 1996 WL 367721 (Conn. Super. Ct. June 3, 1996). In that case, the plaintiff fell on a gangway leading to a dock at a yacht club. *Id.* at *5. The insurer provided a general liability policy to "Thimble Island Café," a restaurant that operated on the same premises and leased the land for the gangway. *Id.* at *4. The insured had represented to the insurer that there were no additional exposures, beyond those involved in the restaurant business, for which coverage was sought. *Id.* at *6. The policy included a section in which the insured agreed that the statements made to procure coverage were accurate and complete and the policy was issued in reliance upon those representations. *Id.* at *5. Even though the policy did not limit coverage expressly to the restaurant business, the court denied coverage, explaining that the only reasonable interpretation of the policy recognized that coverage did not extend to "accidents associated with business

activity different from the business activity for which coverage was initially sought." *Id.* at *8.

The court considered an analogous situation in *Gemini Ins. Co. v. S&J Diving, Inc.,* 464 F.Supp.2d 641 (S.D. Tex. 2006). In that case, the insured was described as a diving contractor that repaired docks and vessels. *Id.* at 649. In obtaining coverage for that business, the insured stipulated that the statements made to procure the policy were accurate and complete and the policy was issued in reliance upon those representations. *Id.* When the insured was sued for damages arising out of an outdoor rock concert and motorcycle rally, the court found it unreasonable "to conclude that the policy covers any and all activity, not specifically excluded, when the insured negotiated as, and described itself to be, a marine operation." *Id.* at 650. The Court interpreted the contract as a whole to limit the policy's coverage to "a marine operation's typical undertakings." *Id.*

Just as in *Cooper* and *Gemini,* the insured in this case obtained coverage for one business and represented that the description of the business and its hazards was accurate and complete. In this case, the policy also indicates that Rose Paving did not own, hire, or lease watercraft, docks, or floats. ECF No. 56-2 at 50. This Court need not decide whether coverage extends to only those activities that fall squarely within the hazards listed in the policy. This contract, when interpreted as

a whole, does not provide coverage for injuries arising out of the operation of a yacht. This much is clear from the business description, the description of hazards, the fact that Rose Paving represented that it did not operate any watercraft, and the fact that Rose Paving acknowledged that the policy was issued in reliance upon its complete and accurate representations. *See also, Steadfast Ins. Co. v. Dobbas,* No. CIV. S-05-0632, 2008 WL 324023 (E.D. Cal. Feb. 5, 2008) (insured's description as "railroad contractor" limited coverage for injuries arising out of farming activities).

Defendants argue that the business description does not limit coverage unless the contract says so expressly. This argument is supported by the unobjectionable proposition that ambiguous terms in an insurance contract are construed liberally in favor of the insured. But that rule of construction is of little help here, because this contract is not ambiguous. *Hobbs v. Hartford Ins. Co. of the Midwest,* 823 N.E.2d 561, 564 (Ill. 2005) ("Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous."). Rather, taking the policy as a whole, and considering the reasons for which coverage was sought, as Illinois law requires, the only reasonable conclusion is that this policy does not cover damages arising out of a fall on a yacht during a chartered cruise.

Defendants also argue that *Cooper* and *Steadfast* were rejected in a case from this District applying Illinois law. In *Philadelphia Indem. Ins. Co. v. 1801 W. Irving Park, LLC,* No. 11 C 1710, 2012 WL 3482260 (N.D. Ill. Aug. 13, 2012), the insured was listed as a condominium association. The court held that the insured's business description, standing alone, did not limit coverage for actions taken by the insured when acting as a real estate developer. *Id.* at *3-5. The Court relied on the fact that the insured "did not own and operate multiple separate businesses, only one of which was insured." *Id.* at *5. Rather, the insured "was a single entity that performed multiple services as part of its condominium development business—which was a named insured under the policy." *Id.* In addition, the insurer could not point to evidence sufficient to show that the insured agreed that its actions as a developer would be excluded from coverage. *Id.* at *4.

Defendants' reliance on *Philadelphia Indemnity* is misplaced for three reasons. First, this Court is relying not on the business description or schedule of hazards standing alone, but rather on the policy as a whole, including the purpose for which the policy was written. Second, unlike the insurer in *Philadelphia Indemnity,* Plaintiff has directed the Court to evidence that the parties did not intend for their insurance contract to cover yacht-related injuries: the insured indicated that it did not own or

Defendants also argue that *Cooper* and *Steadfast* were rejected in a case from this District applying Illinois law. In *Philadelphia Indem. Ins. Co. v. 1801 W. Irving Park, LLC,* No. 11 C 1710, 2012 WL 3482260 (N.D. Ill. Aug. 13, 2012), the insured was listed as a condominium association. The court held that the insured's business description, standing alone, did not limit coverage for actions taken by the insured when acting as a real estate developer. *Id.* at *3-5. The Court relied on the fact that the insured "did not own and operate multiple separate businesses, only one of which was insured." *Id.* at *5. Rather, the insured "was a single entity that performed multiple services as part of its condominium development business—which was a named insured under the policy." *Id.* In addition, the insurer could not point to evidence sufficient to show that the insured agreed that its actions as a developer would be excluded from coverage. *Id.* at *4.

Defendants' reliance on *Philadelphia Indemnity* is misplaced for three reasons. First, this Court is relying not on the business description or schedule of hazards standing alone, but rather on the policy as a whole, including the purpose for which the policy was written. Second, unlike the insurer in *Philadelphia Indemnity,* Plaintiff has directed the Court to evidence that the parties did not intend for their insurance contract to cover yacht-related injuries: the insured indicated that it did not own or

Defendants also argue that *Cooper* and *Steadfast* were rejected in a case from this District applying Illinois law. In *Philadelphia Indem. Ins. Co. v. 1801 W. Irving Park, LLC,* No. 11 C 1710, 2012 WL 3482260 (N.D. Ill. Aug. 13, 2012), the insured was listed as a condominium association. The court held that the insured's business description, standing alone, did not limit coverage for actions taken by the insured when acting as a real estate developer. *Id.* at *3-5. The Court relied on the fact that the insured "did not own and operate multiple separate businesses, only one of which was insured." *Id.* at *5. Rather, the insured "was a single entity that performed multiple services as part of its condominium development business—which was a named insured under the policy." *Id.* In addition, the insurer could not point to evidence sufficient to show that the insured agreed that its actions as a developer would be excluded from coverage. *Id.* at *4.

Defendants' reliance on *Philadelphia Indemnity* is misplaced for three reasons. First, this Court is relying not on the business description or schedule of hazards standing alone, but rather on the policy as a whole, including the purpose for which the policy was written. Second, unlike the insurer in *Philadelphia Indemnity,* Plaintiff has directed the Court to evidence that the parties did not intend for their insurance contract to cover yacht-related injuries: the insured indicated that it did not own or

operate any watercraft and accepted that the policy was given in reliance upon the representations made in the application process.

Finally, the *Philadelphia Indemnity* court distinguished *Cooper* and *Steadfast* on the ground that the insured was a single entity that performed multiple services, while *Cooper* and *Steadfast* both involved "an insured entity that operated multiple independent businesses, purchased insurance for only one of those businesses, and later sought coverage for a different business." *Philadelphia Indemnity,* 2102 WL 3482260 at *5. Rose Paving bears little resemblance to the insured in *Philadelphia Indemnity* that acted as a developer and also operated a condominium association. Rather, Rose Paving is comparable to the entities distinguished by the *Philadelphia Indemnity* court: it operated multiple independent businesses (paving and yacht charters), purchased insurance for only one of those businesses (paving), and later sought coverage for a different business (yacht charters). The factors that were present in *Philadelphia Indemnity* and critical to that court's holding are all absent here.

The Court recognizes and abides by the rule in interpreting insurance contracts that ambiguity is resolved in the insured's favor. But this insurance policy is not ambiguous just because it does not limit coverage expressly to those actions related to paving and construction. This Court's task is to construe the policy as a whole, and it is clear from the entire document that

the contracting parties never intended that coverage extend to damages arising out of a yachting operation, a completely separate subject matter. *Crum and Foster Managers Corp. v. Resolution Trust Corp.,* 620 N.E.2d 1073, 1078 (Ill. 1993) (explaining that the Court construes the insurance policy as a whole, "taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract"). The Vandenberg's injuries, while tragic, are not covered by the Westfield policies, and thus Plaintiff is entitled to judgment as a matter of law.

## IV. REMAINING MOTIONS

Defendant's Motion for Leave to File a Combined Brief is granted. The Court was able to resolve the coverage issues in this case without reference to factual disputes that relate only to issues that did not arise in the foregoing coverage analysis. Had further analysis been necessary, the Court could have considered factual issues outside the pleadings. *Pekin Ins. Co. v. Wilson,* 930 N.E.2d 1011, 1019-20 (Ill. 2010) (explaining that the question of coverage "should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action," so Courts may consider materials outside the complaint in the underlying action unless the evidence "tends to determine an issue crucial to the determination of the underlying lawsuit").

Defendant's Motion for Summary Judgment is denied because the claim is not covered.

Plaintiff's Motion to Strike is denied because it is moot. The issues discussed therein do not affect the coverage analysis undertaken above.

## V. CONCLUSION

For the reasons stated, the Court rules as follows:

1. Defendant's Motion for Leave to File a Combined Brief [ECF No. 66] is granted.

2. Plaintiff's Motion for Judgment on the Pleadings [ECF No. 56] is granted.

3. Defendant's Motion for Summary Judgment [ECF No. 63] is denied.

4. Plaintiff's Motion to Strike [ECF No. 78] is denied as moot.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: 3/5/2014